IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT J. VOLKE, | Case No. 3:10-cv-01492-MA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

JAMES S. COON
820 S.W. Second Ave.
Portland, OR 97204

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

DAVID J. BURDETT
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98105-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Robert Volke seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, this court affirms the decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2004, plaintiff filed an application for DIB and SSI benefits.  Plaintiff alleges disability beginning October 20, 2003, due to schizophrenia and depression.  The claims were initially denied on January 12, 2005, and on reconsideration on April 22, 2005.  Plaintiff filed a request for a hearing before an administrative law judge (ALJ).  An ALJ held a hearing on June 14, 2007, at which plaintiff appeared with his attorney and testified.  A vocational expert (VE), Nancy Bloom, also appeared and testified. On July 24, 2007, the ALJ issued an unfavorable decision.  The Appeals Council denied plaintiff's request for review on December 12, 2007.

Plaintiff appealed to this court on January 11, 2008.  In an Opinion and Order dated March 17, 2009, Judge Anna Brown remanded the case with instructions to the ALJ to consider lay witness

testimony. A second hearing was held on July 28, 2010, at which plaintiff appeared with counsel and testified, as did VE Bloom. The ALJ issued an unfavorable decision on August 16, 2010. Plaintiff directly appealed to this court.

Plaintiff was 44 years old on the alleged onset date and 51 years old at the time of the second hearing. Plaintiff completed high school, one year of college, and was honorably discharged from the Air Force after completing six years of service. Plaintiff has past relevant work as a bakery delivery driver for eight years, a remote history as a construction worker, and has performed "odd jobs" on a part-time basis. Plaintiff is now an artist and has sold approximately 300 paintings.

Plaintiff's schizophrenia surfaced in September of 2002, when he assaulted a neighbor. Plaintiff pleaded "guilty except for insanity" to the following charges: Burglary in the First Degree, Assault in the Fourth Degree, and Criminal Mischief in the Second Degree. As part of his plea, plaintiff was released to the supervision of the Oregon Psychiatric Security Review Board (PSRB) for a period not to exceed 22 years. Since that time, plaintiff has satisfied all the conditions of his release.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step

is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2009. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff had the following severe impairment: schizoaffective disorder versus schiozophrenia, paranoid type, and polysubstance abuse in full, sustained remission. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairment, or combination of impairments did not meet or medically equal a listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ determined that plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is restricted to simple, routine, repetitive work, requiring only occasional, brief, structured interactions with the general public. See 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

At step four, the ALJ found plaintiff unable to perform any past relevant work. See 20 C.F.R. §§ 404.1565, 416.965.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform. See 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966. Accordingly, the ALJ concluded that plaintiff is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ erred by failing to properly consider the lay witness testimony of his sisters, Patricia Stribling and Susan McElmurry, as well as Mike Meyer, his case manager at Casacadia Behavioral Health.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039. "Substantial evidence means

5 - OPINION AND ORDER

more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## DISCUSSION

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. Molina v. Astrue, ___ F.3d ___, 2012 WL 1071637, *7 (9th Cir. Apr. 2, 2012); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so. Valentine, 574 F.3d at 694; Dodrill, 12 F.3d at 919. However, the ALJ is not required to discuss "every witness's testimony on a individualized, witness-by-witness basis.

6 - OPINION AND ORDER

Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 2012 WL 1071637 at *7.

The lay testimony of Ms. Stribling consisted of two letters, dated August 28, 2007 and July 13, 2010, as well as a third party function report dated October 29, 2004. The ALJ discussed Ms. Stribling's October 29, 2004 Third Party Function report. The ALJ relayed Ms. Stribling's description of plaintiff's activities of daily living, noting that plaintiff was then living in a motel with a kitchenette, was able to shop, drive a car, use public transit, and make simple meals. The ALJ noted that Ms. Stribling described plaintiff as needing reminders to bathe and do laundry. The ALJ stated that Ms. Stribling reported that plaintiff does not handle stress or changes in routine well, and becomes reclusive, but that plaintiff could get along with authority figures.

As the ALJ correctly summarized, Ms. Stribling reported in her August 28, 2007 letter that plaintiff began acting strangely in March of 2002, and that Ms. Stribling attempted to get plaintiff medical assistance. The ALJ discussed Ms. Stribling's description of plaintiff's arrest, and subsequent treatment and supervision. The ALJ noted that Ms. Stribling stated that plaintiff's medications had increased, but that plaintiff's symptoms have not been completely eliminated. The ALJ stated that Ms. Stribling

7 - OPINION AND ORDER

opined that plaintiff could not "hold down a regular job because of his paranoid symptoms." (Tr. 407.) Ms. Stribling opined that plaintiff hears voices, experiences paranoia, and extreme anxiety on a daily basis making it impossible for plaintiff to work. (Tr. 368.)

The ALJ also discussed Ms. Stribling's July 13, 2010 letter, in which she described that plaintiff had been compliant with the conditions of release, and that plaintiff's parole was now less restrictive. The ALJ stated that Ms. Stribling reported continued concern about plaintiff's anxiety, depression and paranoia. The ALJ noted Ms. Stribling's opinion that plaintiff would never be able to function in a work environment.

The ALJ similarly provided a thorough summary of Ms. McElmurry's lay testimony, which consisted of two letters dated August 28, 2007 and June 10, 2010. As the ALJ described, in the August 28, 2007 letter, Ms. McElmurry relayed that she first noticed plaintiff's bizarre behavior in March of 2002, and that Ms. McElmurry first suspected plaintiff might be taking drugs, but he was not. The ALJ also noted that Ms. McElmurry stated plaintiff did not interact as much with family, and isolated himself. The ALJ then discussed Ms. McElmurry's June 10, 2010 letter, in which Ms. McElmurry described that plaintiff had improved with medication and counseling. The ALJ noted that Ms. McElmurry still has

concerns with plaintiff's personal hygiene and that plaintiff still experiences occasional paranoid thoughts.

The lay testimony from Mr. Meyer consisted of a letter dated August 30, 2007. The ALJ summarized that letter, stating that Mr. Meyer described plaintiff as appearing competent and appropriate in social settings, but that plaintiff was limited in his ability to interact with others due to his paralyzing ruminations and confusion. The ALJ discussed that Mr. Meyer noted plaintiff was working hard on recovery, was living independently, but needed assistance from social service organizations for housing and medications.

After thoroughly summarizing the letters and report, the ALJ concluded that the lay witness testimony was inconsistent with the contemporaneous observations of plaintiff's treating and examining medical sources, was inconsistent with plaintiff's activities of daily living, and that plaintiff's sisters may have been motivated to help plaintiff.

I begin by observing that plaintiff has not challenged the ALJ's assessment of the medical evidence or plaintiff's credibility. And, I reject plaintiff's argument that the ALJ has erred in failing to provide an individualized, witness-by-witness discussion of the lay testimony. This argument recently was rejected by the Ninth Circuit. <u>Molina</u>, 2012 WL 1071637, at *7.

Plaintiff correctly notes that an ALJ may not discount lay testimony solely based on a close familial relationship between a claimant and the lay witness. Compare Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009)(ALJ may not reject lay testimony on basis of close relationship without explanation); with Valentine, 574 F.3d at 694 (ALJ may discount spouse's testimony where there is evidence that spouse exaggerated claimant's symptoms to access benefits).

Even assuming *arguendo* that the ALJ discounted plaintiff's sisters' testimony solely on the basis of their relationship to plaintiff, any such error would be harmless because the ALJ has provided other multiple, germane reasons for discounting their testimony. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)(where error is inconsequential to ultimate disability determination, it is harmless).

First, the ALJ found that the lay testimony was inconsistent with contemporaneous reports of plaintiff's treating and examining physicians. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)(ALJ may discount lay testimony that conflicts medical evidence); Glover v. Astrue, ___ F.Supp.2d ___, 2011 WL 6071360 (D. Or. Dec. 6, 2011)(same). To be sure, the ALJ specifically cited a notation from plaintiff's treating psychologist Mike Terry, Psy. D., who reported on September 8, 2003, that plaintiff had just returned from a trip with his family to visit relatives in Washington and

10 - OPINION AND ORDER

Idaho, and that plaintiff reported having the most difficulty with "boredom," and reported no difficulty managing his symptoms. (Tr. 143.)

Plaintiff contends that the ALJ should not have considered this statement as inconsistent because it occurred prior to plaintiff's alleged onset of disability date. I disagree. Plaintiff's alleged onset date is October 20, 2003, slightly more than one month after Dr. Terry's notation. Furthermore, Dr. Terry began treating plaintiff following his placement on PSRB supervision, and his treatment notes span from October of 2002 to November of 2003. Although the ALJ did not specifically discuss the other treatment notes from Dr. Terry in that section of the decision, the ALJ did cite them as inconsistent, and Dr. Terry's notes in October and November of 2003 indicate that plaintiff was continuing to manage his mental illness symptoms well and that "boredom remained a problem." (Tr. 140-41.) I conclude that Dr. Terry's observations that plaintiff was effectively managing his mental illness symptoms conflicts with the lay testimony of Mr. Meyer, Ms. Stribling, and Ms. McElmurry.

Although the ALJ did not specifically analyze additional inconsistent medical evidence, the ALJ did cite to other evidence which the ALJ previously discussed. The ALJ detailed that beginning in March of 2008, plaintiff began receiving supplemental treatment through the Veteran's Administration. The ALJ noted that

11 - OPINION AND ORDER

plaintiff's treating physician, Susan S. Levitte, examined him on March 6, 2008, and confirmed his schizophrenia and alcohol abuse in remission diagnoses. The ALJ noted that Dr. Levitte again saw plaintiff in March of 2009, and that plaintiff reported only mild auditory hallucinations at that time. The ALJ discussed that plaintiff visited Dr. Levitte again in March of 2010, and at that time, Dr. Levitte noted plaintiff's grooming was good, his thoughts rational, and that plaintiff denied any recent hallucinations, but still had a little occasional paranoia around strangers. The ALJ observed that Dr. Levitte stated plaintiff was clinically stable, and that plaintiff was busy with art shows and painting. To be sure, plaintiff does not challenge the ALJ's analysis and treatment of Dr. Levitte's records in this proceeding. Therefore, I conclude that the ALJ has cited and discussed medical evidence that conflicts with the lay testimony concerning the allegedly debilitating nature of plaintiff's symptoms. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

Second, in discounting the lay testimony, the ALJ specifically noted that several of plaintiff's case managers at Cascadia described his affect as "bright" and "cheerful," and that plaintiff's interactions with others were good. (Tr. 281.) I note that this evidence directly conflicts with the ALJ's summary of Mr. Meyer's testimony that plaintiff suffered paralyzing ruminations and was limited in his ability to interact with others.

12 - OPINION AND ORDER

Third, the ALJ specifically discussed that the record demonstrated few instances of plaintiff's poor hygiene, which directly contradicted Ms. Stribling's statement that she needed to remind plaintiff to bathe and Ms. McElmurry's concerns about plaintiff's hygiene. This reason is germane to Ms. Stribling and Ms. McElmurry, is supported by substantial evidence in the record, and therefore the ALJ could discount their testimony on that basis. Bayliss, 427 F.3d at 1218; Lewis, 236 F.3d at 511.

Fourth, the ALJ found that plaintiff's daily activities, including plaintiff's activities in the "arts community" were inconsistent with the lay testimony. Plaintiff argues that his ability to interact in a structured art therapy class at Cascadia does not mean that he can handle full-time employment, citing Kittleson v. Astrue, 533 F.Supp.2d 1100 (D. Or. 2007).

In Kittleson, the plaintiff had been living at the Veterans Administration domicilary (VA Dom), a structured living setting, for nearly six and half years. 533 F.Supp.2d at 1114. There, the ALJ rejected the plaintiff's application for benefits, in part based on the plaintiff's ability to perform work at the VA Dom, and participate in VA-sponsored outings. On appeal, the court concluded that the ALJ erred by failing to consider the impact of the highly structured setting when considering the plaintiff's ability to function. Id. at 1115. The Kittleson court concluded that in light of evidence demonstrating that the plaintiff's only

13 - OPINION AND ORDER

period outside the VA Dom led to a suicide attempt and the plaintiff seeking readmission, the ALJ erred in discounting the plaintiff's testimony concerning the severity of his depression. Id.

Unlike Kittleson, the record here does not show that plaintiff resides in a highly structured setting. On the contrary, plaintiff lives in his own subsidized-rent apartment, pays his bills on time, and takes public transportation to his appointments for group therapy or on-on-one counseling sessions. Indeed, the record in this case is devoid of any hospitalizations or inpatient treatment of any kind. Plaintiff testified that, pursuant to his PSRB release, he needs to spend 20 hours a week doing "structured" activities, such as volunteering, working, or attending school. (Tr. 577.) Plaintiff also testified that for the past two years, PSRB has considered the time he spends painting towards his 20 hours. (Tr. 577-78.) Additionally, plaintiff has failed to demonstrate how his PSRB supervision and time spent at Cascadia is akin to the type of "hospital, board and care facility" discussed in Kittleson. Therefore, I find Kittleson inapposite.

In this case, the ALJ undertook a thorough discussion of plaintiff's art activities. In discussing plaintiff's credibility, a finding not challenged by plaintiff, the ALJ noted that plaintiff began painting at an art therapy class offered at Cascadia. The ALJ also stated that plaintiff testified that he began showing and

14 - OPINION AND ORDER

selling his artwork at a Starbucks near his apartment in 2005. The ALJ discussed plaintiff's testimony that he has sold approximately 300 paintings, and has earned $10,000 in sales since 2005. The ALJ further discussed plaintiff's testimony that he has developed a relationship with a very reputable local artist, securing an agreement to display his art at the artist's gallery, and that plaintiff appears at the gallery every first Thursday to talk to people and meet potential buyers. The ALJ also discussed evidence from a VA caseworker that plaintiff reported visiting with others at a coffee shop, that plaintiff volunteered at Cascadia, and attended art shows throughout Portland, associating and interacting with other artists.

Thus, I find that plaintiff's participation in the "arts community" is a germane reason for discounting all of the lay testimony. Plaintiff's ability to develop relationships, interact with other artists, and meet with potential art buyers contradicts the lay testimony of Ms. Stribling and Ms. McElmurry that plaintiff isolates himself, hibernates, and cannot interact outside of his family. Moreover, plaintiff's participation in the arts community directly contradicts Mr. Meyer's testimony that plaintiff is limited in his ability to interact with others and suffers paralyzing ruminations and confusion from his illness, as previously described by the ALJ. Valentine, 574 F.3d at 694; Molina, 2012 WL 1071637, at *7, 13.

15 - OPINION AND ORDER

In sum, I conclude that the ALJ has provided germane reasons for discounting the lay testimony, which are supported by substantial evidence in the record. <u>Valentine</u>, 574 F.3d at 694.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this 30 day of APRIL, 2012.

*[signature: Malcolm F. Marsh]*
Malcolm F. Marsh
United States District Judge

16 - OPINION AND ORDER